The Honorable Jerry Bookout State Senator P.O. Box 415 Jonesboro, AR 72401
Dear Senator Bookout:
This is in response to your request for an opinion regarding local fire pension and relief funds. You have asked the following specific questions in this regard:
 1. Under A.C.A. 24-11-801, who has authority to vote on pension fund matters, and is everyone who holds a vote considered to be a fiduciary of the fund under pension fund laws ad the Prudent Investor Code?
 2. If a member of a pension fund board of trustees is also an officer of a financial institution in which the pension fund board is considering investing money, does a conflict of interest exist for that board member and what is the proper course of action for that board member?
 3. Under A.C.A. 24-2-201, et seq., 24-9-201, et seq., and 24-11-805 may a board of trustees of a local fire pension fund, without the assistance of an investment advisor, do the following:
 a. Buy federally insured securities from a broker? A bank or savings and loan?
 b. Buy government bonds through a broker? A bank or savings and loan?
 4. In quoting A.C.A. 24-11-805, does ". . . established and authorized to do business in Arkansas," mean the same as domiciled in Arkansas?
Arkansas Code of 1987 Annotated 24-11-801(a) (Supp. 1987) specifies the membership of the board of trustees ("board") of the firemen's pension and relief fund and provides that the board "shall be composed of the chief executive, the city clerk or recorder, and the fire chief of every city, incorporated town, or duly organized fire protection district, in addition to three (3) active members and one (1) retired member of the pension fund." In the absence of language limiting voting by members of the board, it appears that all of the members enumerated in subparagraph (a) may vote on matters pertaining to the pension fund.
The following statement appears in Black's Law Dictionary, Fifth edition at page 563, under the term "fiduciary": "a trustee . . . possess a fiduciary responsibility to the beneficiaries of the trust to follow the terms of the trust and the requirements of applicable state law." It may thus be concluded that a fiduciary relationship exists between the board of trustees of the firemen's pension and relief fund and the beneficiaries of the fund.
Your second question involves the issue of an impermissible conflict of interest which may arise as a result of a trustee's position as an officer of a prospective financial institution with whom the fund may deal. The answer to this question may depend upon the particular fund involved. A.C.A. 24-10-402(b), which applies to the board of trustees of the Arkansas Local Police and Fire Department System created under Act 364 of 1981, states as follows:
 Except as to the rights of a member, retirant, or beneficiary, no trustee and no officer or employee of the board shall have any direct or indirect interest in the gains or profits of any investment made by the board; nor shall any of them, directly or indirectly, for himself or as an agent, in any manner use the assets of the system except to make such current and necessary payments as are authorized by the board; nor shall any of them become an endorser or surety or become in any manner an obligor for moneys loaned by or borrowed from the board.
It seems that a conflict of interest may arise under 24-10-402(b) if a member of the Board of Trustees of the Arkansas Local Police and Fire Department System, by virtue of his or her position as an officer of the financial institution, has a "direct or indirect interest in the gains or profits" of the investment. This is a factual question to be resolved on a case by case basis. The language of 24-10-402(b) would appear to prohibit that particular investment, in the event of such a conflict.
While there appears to be no similar prohibition applicable to boards of trustees of other local police and fire pension and relief funds, prudency would dictate that the board member refrain from voting on any matter involving a potential personal interest.
Your third question involves the direct investment authority of the board. A.C.A. 24-11-805 prescribes the investment powers of the board of trustees of local firemen's pension and relief funds. Acts 6 and 16 of 1985 amended the statutory provisions pertaining to these investment powers. Both acts amend, inter alia, Section 15 of Act 491 of 1921, as amended (A.C.A. 24-11-805), "to allow Fire . . . Pension and Relief Funds with $500,000 in Assets or more to diversify their Investment Programs." See titles to Acts 6 and 16 of 1985. Section 3 of Acts 6 and 16 states as follows:
 Section 15 of Act 491 of 1921 as amended . . . is hereby amended to read as follows:
 `Section 15. All moneys provided for said fund by this Act shall be paid over to and received by the Treasurer of the city or town for the sole use and benefit of the Firemen's Relief and Pension Fund, and said Fund shall be used for no other purpose, and the additional duties thus imposed upon said Treasurer shall be and comprise additional duties for which he shall be liable under his oath and bond as such City of Town treasurer; provided, however, that the said Board of Trustees shall have power with the consent of a majority of the firemen at the time employed, expressed in writing and filed with the City Clerk, to authorize the Treasurer to draw such sums from its treasury to invest such sums in the name of the Board of Trustees of the Firemen's Relief and Pension Fund, in interest-bearing bonds of the United States, of the State of Arkansas, or of the city where such board is located, or in Certificates of Deposit or time deposits in banks duly established and authorized to do business in this State, or in Savings and Loan Associations duly established and authorized to do business in this State.
All such securities shall be deposited with the Treasurer of the Board of Trustees of the Relief and Pension Fund, and shall be subject to the order of said board.
Provided, that in those pensions and relief funds in which assets exceed $500,000, the Board of Trustees may employ professional investment counsel to invest the assets subject to the terms, conditions, limitations, and restrictions imposed by law upon the Arkansas Local Police and Fire Retirement System, as provided by Subsection 6.10 of Section 6 of Act 364 of 1981, as amended, and shall not be limited to interest-bearing bonds, certificates of deposit and time deposits.'
It was concluded in Opinion No. 87-105, a copy of which is enclosed herein, that as to assets for which the board retains management responsibility, investments will be limited to bonds of the United States, of the State of Arkansas, or of the city in which the board is located, and to certificate of deposit or time deposits. This investment authority would not appear to extend, generally, to the purchase of federally insured securities. However, A.C.A. 24-10-402(a)(7) may be relied upon as authority for the board's investment of system funds in shares of certain no-load mutual funds. The mutual fund must have the characteristics specified under 24-10-402(a)(7)(A)-(C).
A.C.A. 24-9-208 must be considered in response to your question involving the purchase of government bonds through a broker, a bank, or a savings and loan association. Section 24-9-208 is the codification of Section 7 of Act 282 of 1973. This Act applies to the investment of trust fund assets under the administration of political subdivisions of the State. See, A.C.A. 24-9-202. Section 24-8-208(a) states:
 When the board of trustees of a trust decides to invest trust moneys in negotiable securities, the board shall purchase the securities from reputable bonded dealers in those securities.
It may reasonably be concluded that bonds are included within the term "negotiable securities." "Securities" are defined in Black's Law Dictionary, Fifth Edition at p. 1215 as: "Stock, bonds, notes, convertible debentures, warrants or other documents that represent a share in a company or a debt owed by a company." It thus appears that the board may, without the assistance of an investment advisor, purchase government bonds through brokers, banks, or savings and loan associations that qualify as "reputable dealers in securities."
It must be noted in response to your final question that the domicile of a corporation is determined by the place where its principal business is transacted or where the corporation is located. Domicile is also determined by the place of incorporation, such place being designated by the articles of incorporation. 18 C.J.S. Corporations 176 (1978). This is substantially the same view adopted in Arkansas. See, Home Fire Insurance Co. v. Benton, 106 Ark. 552, 153 S.W.2d 830 (1913); Missouri Pac. R. Co. v. W. S. Fox Sons, Inc., 251 Ark. 247,472 S.W.2d 766 (1976).
It was concluded in Opinion No. 87-105 that Act 491 of 1921 (codified as A.C.A. 24-11-805) limits investments in savings and loan associations to those located in Arkansas. (See, Op. No. 87-105, p. 3 4, attached hereto). This would also apply to investments in banks. Thus in response to your specific question, it may be concluded that this language means the same as "domiciled" in Arkansas only to the extent that it requires that the institutions be located in Arkansas.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
NOTE: For Opinion 87-105, see this file 87-105 and 87-105.1.